AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Five Cellphones Seized in Rotterdam, New York, on February 23, 2026 and in the Custody of the New York State Police | )<br>)<br>)  Case No. 1:26-sw-57  (DJS)<br>)<br>)<br>) |

U.S. DISTRICT COURT – N.D. OF N.Y.
**FILED**
Mar 03 - 2026
John M. Domurad, Clerk

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ____Northern____ District of ____New York____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1),(b)(1)(B) | Distribution and possession with intent to distribute of a controlled substance |
| 21 U.S.C. § 846 | Conspiracy to commit controlled substances offenses |

The application is based on these facts:
See Affidavit

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Task Force Officer Joshua M. Comitale
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ *(specify reliable electronic means)*.

Date: March 3, 2026

City and state: Albany, New York

_____
*Judge's signature*

U.S. Magistrate Judge Daniel J. Stewart
*Printed name and title*

U.S. DISTRICT COURT – N.D. OF N.Y.
**FILED**
Mar 03 - 2026
John M. Domurad, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF FIVE CELLPHONES SEIZED IN ROTTERDAM, NEW YORK, ON FEBRUARY 23, 2026 AND IN THE CUSTODY OF THE NEW YORK STATE POLICE | Case No. 1:26-sw-57 (DJS) |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Joshua M. Comitale, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure in support of an application for a search warrant for the information to be searched as further described in the following paragraphs and in Attachment A, for the things described in Attachment B, specifically:

    a. An orange iPhone in a black case with a cracked screen;

    b. A rose-colored iPhone in a green case with a cracked screen and back;

    c. An orange iPhone in a clear case;

    d. A black iPhone in a black case with scratches on the front glass; and

    e. A grey iPhone in a clear case with a cracked screen.

2. I have been a police officer with the Troy Police Department (TPD) since July 2008 and a detective since April 2017. I have investigated numerous cases involving assaults, firearms possession, drug trafficking and homicide. In May 2023, I was assigned as a Task Force Officer (TFO) to the Federal Bureau of Investigation (FBI) Albany Field Office's Capital District Safe Streets Gang Task Force (the Safe Streets Task Force), which is a task force that

investigates violent crime, gang activity, and drug trafficking, and is comprised of federal, state, and local law enforcement. I am familiar with federal drug trafficking laws.

3. I am a "federal law enforcement officer" as defined by Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent (other than an attorney for the government) who is engaged in enforcing the criminal laws and is within a category of officers authorized by the Attorney General to request a search warrant.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on my training, experience and knowledge of the investigation, there is probable cause to believe that Brian Jackson and Ammar Elordi have violated 21 U.S.C. § 841(a)(1)(A) and (b)(1)(B), distribution and possession of controlled substances with intent to distribute, and 21 U.S.C. § 846, conspiracy to commit the same, and that evidence of these violations will be found on the cellphones to be searched.

## INVESTIGATION AND PROBABLE CAUSE

6. The investigation arises out of the arrest of Ammar Elordi and Brian Jackson in the evening of Monday, February 23, 2026, in Rotterdam, New York.

7. Around 4 p.m., the Safe Streets Task Force informed New York State Police (NYSP) that it had received credible intelligence that a car would be travelling to the New York City area and returning that night with an unknown amount of narcotics. Around 8 p.m., NYSP was informed that the car had driven to the NYC area. The car was a 2025 grey Toyota Camry with the New York license plate LEW 7848. Around 10 p.m., the vehicle passed the license

plate reader in Saugerties, New York heading north on I-87. Around 10:40 p.m., the car was seen in the middle lane of I-87 in Guilderland. Shortly afterwards, it was seen going west along I-890.

8. The car was pulled over for traffic violations, including unsafe lane changes. The driver identified himself as Ammar Elordi. Elordi's hands were shaking and he began sweating as he was speaking with the patrol. He got out of the car and was unsteady on his feet, spoke in a trembling voice and continued sweating despite the freezing weather.

9. Ammar said that he left Schenectady at 10 p.m. to visit his daughter in Latham and was now going home.

10. The passenger was identified as Brian Jackson. When Jackson got out of the car, he was unsteady on his feet and did not listen to commands given by the officers. Jackson said that they were returning from NYC where they visited a member of his family. When an officer asked him why he and Elordi were saying different things, Jackson said he had been asleep and didn't know where Elordi had been.

11. Elordi did not consent to be searched. A dog did a free-air sniff of the car and alerted to narcotics. Elordi and Jackson were detained. The car was searched and a brown paper bag was found under the passenger seat. Inside the bag were one vacuum-sealed plastic bag and one plastic baggie, each containing a white powdery substance.

12. The substance was field-tested and was found to contain cocaine. The total weight of the two bags were 631.3 grams, including packaging.

13. Both Elordi and Jackson have criminal records, including convictions for drug offenses. Law enforcement has been investigating Jackson for controlled substance offenses since August 2024.

14. Four iPhones were found in the car and one iPhone was found in Elordi's person.

15. Based on the above, there is probable cause to believe that Elordi and Jackson have violated 21 U.S.C. § 841(a)(1) and (b)(1)(B), distribution and possession of controlled substances with intent to distribute, and 21 U.S.C. § 846, conspiracy to commit the same. There is also probable cause to believe that evidence relating to the offenses described above will be found on the five cellphones. Cellphones often contain evidence about almost every aspect of a person's existence — where that person travels, who he or she talks to, their text messages and emails, the job they do, what they are interested in, and so forth. It is reasonable to believe that communications relating to the target offenses will be found on the cellphones. This may include, without limitation, geolocation information showing where Elordi and Jackson had been on the night of the arrest; communications with drug suppliers; communications with potential customers of the drugs; and details of past sales of drugs.

16. The devices to be examined are as follows, with their NYSP evidence barcodes in parentheses:

   a. An orange iPhone in a black case with a cracked screen (barcode P26007748);

   b. A rose-colored iPhone in a green case with a cracked screen and back (barcode P26007748);

   c. An orange iPhone in a clear case (barcode P26007749);

   d. A black iPhone in a black case with scratches on the front glass (barcode P26007749); and

   e. A grey iPhone in a clear case with a cracked screen (barcode P26007749).

17. All these cellphones are currently in the possession of the NYSP.

## SEARCH AND SEIZURE OF CELLPHONES

18. Based upon my training and experience, it will be necessary for law enforcement to make copies of the five cellphones listed in Attachment A in order to search them and seize the information listed in Attachment B. Cellphones can contain enormous amounts of information. The standard way to search them, which preserves the evidence upon them, is to make a forensic extraction or image of the device. It is expected that forensic extractions will be made in the course of examining these cellphones. The requested warrant would authorize both the search of the actual cellphones seized incident to the arrests and also the search of the forensic extraction or copy of those devices.

19. In addition, the requested warrant would permit law enforcement to obtain from Elordi and Jackson the display of physical biometric characteristics (such as fingerprint, thumbprint, or facial characteristics) in order to unlock devices subject to search and seizure pursuant to this warrant. Many electronic devices, particularly mobile devices, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners and facial recognition features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

20. If a device is equipped with a facial recognition feature, a user may enable the ability to unlock the device through his or her face. For example, Apple offers a facial recognition feature called "Face ID." During the Face ID registration process, the user holds the device in front of his or her face. The device's camera then analyzes and records data based on the user's facial characteristics. The device can then be unlocked if the camera detects a face

with characteristics that match those of the registered face. Facial recognition features found on devices produced by other manufacturers have different names but operate similarly to Face ID.

21. Similarly, if a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device. Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) located at the bottom center of the front of the device. The fingerprint sensors found on devices produced by other manufacturers have different names but operate similarly to Touch ID.

22. In my training and experience, users of electronic devices often enable the aforementioned biometric features because they are considered to be a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password. Moreover, in some instances, biometric features are considered to be a more secure way to protect a device's contents.

23. The passcodes or passwords that would unlock the five cellphones subject to search under this warrant are not known to law enforcement. Thus, law enforcement personnel may not otherwise be able to access the data contained within the devices, making the use of biometric features necessary to the execution of the search authorized by this warrant.

24. I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric features will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain

6

period of time. For example, Apple devices cannot be unlocked using Touch ID when (1) more than 48 hours has elapsed since the device was last unlocked or (2) when the device has not been unlocked using a fingerprint for 4 hours *and* the passcode or password has not been entered in the last 156 hours. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

25. Because of this, if it appears that a cellphone being searched may be unlocked using one of the aforementioned biometric features, the warrant I am applying for would permit law enforcement personnel to (1) press or swipe the fingers (including thumbs) of Elordi or Jackson to the fingerprint scanner of the device; and (2) hold the device in front of Elordi or Jackson's face and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search its contents as authorized by this warrant. The warrants would also permit law enforcement to (1) press or swipe the fingers (including thumbs) of Elordi or Jackson to the fingerprint scanner of a device possessed by that individual; and (2) hold a device in front of Elordi or Jackson's face and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

## EXECUTION OF SEARCH WARRANT

26. This search warrant will be executed on the five cellphones and their related forensic extractions by me, other FBI Special Agents, Task Force Officers and personnel, NYSP, and other law enforcement agencies as required. The five cellphones and their forensic extractions will be examined at the computer forensic laboratories of the FBI or other law enforcement agencies.

7

27.   Because the cellphones are in the possession of law enforcement, it is respectfully submitted that there is good cause to execute this warrant at any time of day or night. However, if it is necessary to unlock a cellphone using the biometric features described above, law enforcement will only attempt to do between the hours of 6 a.m. and 10 p.m.

Respectfully submitted,

_____
Joshua M. Comitale
Task Force Officer
Federal Bureau of Investigation


I, the Honorable Daniel J. Stewart, United States Magistrate Judge, hereby acknowledge that this affidavit was attested to by the affiant by telephone on March 3, 2026 in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

_____
Hon. Daniel J. Stewart
United States Magistrate Judge

8

## ATTACHMENT A

*Property to be searched*

The property to be searched is as follows, with New York State Police evidence barcodes in parentheses:

  a. An orange iPhone in a black case with a cracked screen (barcode P26007748);

  b. A rose-colored iPhone in a green case with a cracked screen and back (barcode P26007748);

  c. An orange iPhone in a clear case (barcode P26007749);

  d. A black iPhone in a black case with scratches on the front glass (barcode P26007749); and

  e. A grey iPhone in a clear case with a cracked screen (barcode P26007749).

All these cellphones are currently in the possession of the NYSP.

In addition, the search may include any forensic images or extractions made of the five cellphones listed above.

## ATTACHMENT B

*Description of property to be seized*

All records and information constituting fruits, evidence, or instrumentalities of violations of 21 U.S.C. § 841(a)(1) and (b)(1)(B), distribution and possession of controlled substances with intent to distribute, and 21 U.S.C. § 846, conspiracy to commit the same, from August 2024 to the present. These include:

a. Any and all communications, photographs, videos, or other information relating to distribution or possession with intent to distribute controlled substances.

b. Any and all address books, names, and lists of names and addresses of persons engaged in drug trafficking, or illicit use of narcotics.

c. Any and all communications, photographs, videos or other information evidencing membership in gangs.

d. Any information related to other illegal acts that may accompany the trafficking of narcotics, such as firearms possession or gang membership.

e. Financial records, including cash, applications, and bank or financial records evidencing the movement, placement, depositing, withdrawal, or expenditure of money and the source of any funds identified.

f. Location data and other information sufficient to establish the location of the cellphone at the times of criminal activity, or the location of stash houses, gang hangouts, and residences of the user of the cellphone or other persons participating in illegal activity.

g. Records related to the purchase of personal assets, including but not limited to real estate, vehicles, and jewelry.

h. Records related to foreign or domestic travel to include but not limited to passports, documentation of travel destinations and time periods, and any and all records of expenses related to travel.

i. Evidence of user attribution showing who used or owned the cellphone at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

j. Evidence of software that would allow others to control the cellphone, such as viruses and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software, and evidence of the absence of such malicious software.

k. Evidence indicating how and when the cellphone was accessed or used to determine the chronological context of the access, use, and events relating to crimes under investigation and to the user, including concerning the user's state of mind as it relates to the offenses under investigation.

l. Passwords, encryption keys, and other access devices that may be necessary to access any electronic media or accounts.

m. Records of or information about Internet Protocol addresses used by the cellphone, as well as records of or information about the cellphone's internet activity, including firewall logs, caches, browser history and cookies,

    "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

n. Contextual information necessary to understand the evidence described in this attachment.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the Federal Bureau of Investigation (FBI) may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

During the search of the cellphones identified in Attachment A, photographs or recordings may be taken to record their condition and the location of items in them.

The search warrant will be executed on the phone and the related forensic image by FBI Special Agents, Task Force Officers and personnel, and other law enforcement officers as necessary.